IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CARL ALPHONSO MACK,<br><br>　　　　Plaintiff,<br><br>v.<br><br>ZACH LOVE and JON WINTERS,<br><br>　　　　Defendants. | Case No. 18-cv-506-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Pending before the Court is a motion for summary judgment filed by Defendants Zach Love and Jon Winters. (Doc. 104). For the reasons set forth below, the motion is granted in part and denied in part.

### FACTS

The following facts are not genuinely disputed for purposes of summary judgment. Plaintiff Carl Mack, an inmate of the Illinois Department of Corrections ("IDOC") previously housed at Shawnee Correctional Center ("Shawnee"), filed this action pursuant to 42 U.S.C. § 1983. (Doc. 1). Mack alleges that Defendants Love and Winters violated the Eighth Amendment to the United States Constitution when they acted with deliberate indifference to his medical needs when they refused to place him in a low bunk. (Doc. 62).

Mack entered IDOC custody on August 10, 2017, at the Statesville Northern Reception and Classification Center ("NRC"). (Doc. 106, p. 2). While at NRC, Mack was given a special needs permit for a "low bunk, low galley," with the order set to expire in

30 days. (*Id*.). Mack received a low bunk permit because of his diabetes, repeated hypoglycemic attacks, and additional medical conditions (Doc. 105-12, p. 8, Doc. 106, p. 4).

Mack was scheduled to be transferred from the NRC to Shawnee on August 29, 2017. (Doc. 106, p. 2). A day before the transfer, Defendant Winters was assigned to Shawnee's Assignment Office; he provided a list of all inmates transferring into Shawnee. (Doc. 105-11, p. 26). Defendant Winters then entered the name and number of each inmate into a program called Offender 360. (Doc. 105-11, p. 27). Defendant Winters did not have access to mental or medical health records, and he was not able to edit or change information in the Offender 360 special requirement report. (Doc. 105-9, pp. 18-19).[1] Notably, on August 29, 2017, Mack did not have a low bunk or low gallery accommodation on his Offender 360 special requirement report. (Doc. 105-11, p. 26).

On August 30, 2017, at 3:30 a.m., a nurse at Shawnee examined Mack and reviewed his Offender Health Status Transfer Summary. (Doc. 105-1, p. 16; Doc. 105-12, p. 3;). On Mack's Health Status Transfer Summary, the section on physical disabilities and limitations listed "low bunk low gallery." (Doc. 105-3, p. 5). During this exam, Mack alleges that he informed the nurse that he had a low bunk/low gallery permit, but the nurse informed him that she could not put him on a low bunk/low gallery. (Doc. 105-1, p. 16).

Four hours or so later, Defendant Winters started his shift in the Assignment

---

[1] Defendant Winters had access to some medical records because he would know whether an inmate had epilepsy. (Doc. 105-9, p. 20).

Office. (Doc. 105-8, pp. 72, 91). Defendant Winters did not receive any emails from the Health Care Unit ("HCU") that day. (Doc. 105-11). Defendant Winters, however, sent out an email of the daily cell changes around 2:30 p.m. (Doc. 105-11, p. 22). The daily cell changes noted that Mack was assigned a *top bunk* in Housing Unit 1, A-wing, cell 60. (Doc. 105-11, p. 23).

Later that afternoon, Mack received a low bunk/low gallery permit. (Doc. 105-13, p. 1). Mack's medical records also confirm that the HCU provided notification that evening. (Doc. 105-3, p. 7). Yet, Mack slept in the top bunk the night of August 30, 2017.

On August 31, 2017, Defendant Love was working at the Assignment Office. (Doc. 105-8, p. 61). Defendant Love's shift started at 7:00 a.m. and ended at 3:00 p.m. (*Id.* at p. 92). Despite the permit and the HCU notification, there is no record of Defendant Love sending out an email of the daily cell changes, and Mack slept in the top bunk the night of August 31, 2017.

In the early morning, on September 1, 2017, Mack rolled off the top bunk and hit the area around his left shoulder, but did not lose consciousness. (Doc. 105-3, p. 9). Though Defendant Love never received an email from the HCU, around noon on September 1, 2017, Defendant Love reassigned Mack to a low bunk. (Doc. 105-11, pp. 19-20).[2]

---

[2] According to Defendants' interrogatories, "[t]he Assignments Office only assigns offenders with low bunks if they are notified by the Health Care Unit (HCU) or emailed by HCU informing them that a specific offender requires such accommodation." (Doc. 105-8, p. 64, 75). Here, there is no email from the HCU notifying Defendant Love.

## LEGAL STANDARD

Summary judgment is only appropriate if the movant "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Spurling v. C & M Fine Pack, Inc.*, 739 F.3d 1055, 1060 (7th Cir. 2014) (quoting FED. R. CIV. P. 56(a)). Once the moving party sets forth the basis for summary judgment, the burden then shifts to the nonmoving party who must go beyond mere allegations and offer specific facts showing that there is a genuine issue of fact for trial. FED. R. CIV. P. 56(e); *see Celotex Corp. v. Catlett*, 477 U.S. 317, 232-24 (1986). The nonmoving party must offer more than "[c]onclusory allegations, unsupported by specific facts," to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citing *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888 (1990)).

In determining whether a genuine issue of fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[i]nferences that rely upon speculation or conjecture are insufficient." *Armato v. Grounds*, 766 F.3d 713, 719 (7th Cir. 2014). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial." *Id.* (citation omitted).

## DISCUSSION

### I. Count I – Deliberate Indifference

Mack brings an Eighth Amendment deliberate indifference claim against Winters and Love because they allegedly refused to place him in a low bunk. Defendants Winter

and Love do not refute Mack's serious medical condition, but argue they were not deliberately indifferent to Mack because they were "never subjectively aware of those needs." (Doc. 105, p. 7).

The Eighth Amendment prohibits cruel and unusual punishments and deliberate indifference to the "serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of pain forbidden by the Constitution." *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009). A prisoner is entitled to "reasonable measures to meet a substantial risk of serious harm"—not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To succeed on an Eighth Amendment deliberate indifference claim, a plaintiff must show: (1) that he suffered from an objectively serious medical condition; and (2) that the individual defendant was deliberately indifferent to that condition. *Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (citing *Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). A medical condition is objectively serious if "a physician has diagnosed it as requiring treatment, or the need for treatment would be obvious to a layperson." *Pyles v. Fahim,* 771 F.3d 403, 409 (7th Cir. 2014)).

Prevailing on the second prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Gayton v. McCoy*, 593 F.3d 610, 653 (7th Cir. 2010). The plaintiff need not show the individual "literally ignored" his complaint, but that the individual was aware of the condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008). Deliberate indifference involves "intentional or reckless conduct, not

mere negligence." *Berry*, 604 F.3d at 440 (citing *Gayton*, 593 F.3d at 620).

There is nothing to suggest that Defendant Winters was aware of the low bunk permit, Mack's medical condition, or any other details as to Mack's situation. At best, Mack claims he "talked to everybody[,] [ ] [l]ike, every officer, everybody [he] [had] seen." (Doc. 105-1, p. 19). Mack never met Defendant Winters. (*Id*. at p. 22). Mack never provided Winters with the low gallery permit from NRC. (*Id*.). Mack never tried to communicate with Winters through a request slip or letter. (*Id*.).

At the same time, there is evidence when construed in the light most favorable to Mack that suggests that Defendant Love was aware of the low bunk permit. Mack's medical records confirm that the HCU provided notification on the evening of August 30, 2017 (Doc. 105-3, p. 7). Unlike Winters, where Winters's shift had ended around 3:00 p.m., Love's shift in the Assignment Office began the very next day at 7:00 a.m. (Doc. 105-11, p. 92).

Counsel for Love points out there is no evidence of Love receiving an email from the HCU regarding Mack's low bunk permit. Love's counsel relies on the lack of an email from the HCU, and argues that "Defendant Love always received an email from the HCU if an inmate had a low bunk/low gallery permit written by the HCU medical staff and needed a new cell assignment" (Doc. 105, p. 12). The problem is Defendant Love still assigned Mack to a low bunk on September 1, 2017 after Mack fell from the top bunk, and neither Defendant Love nor his counsel have been able to "explain how or when [Love] received notice that [ ] Mack required this assignment change" (Doc. 106, p. 10). Since there is evidence that the HCU provided notification of Mack's low bunk permit on the

evening of August 30, 2017 – and Defendant Love was the next officer to work in the Assignment Office on August 31, 2017, a reasonable jury could find that Defendant Love was personally involved and acted with deliberate indifference to Mack's serious medical needs.

## II. Qualified Immunity

Simply put, Defendant Love is not entitled to qualified immunity. "Generally, qualified immunity protects government agents from liability when their actions do not violate 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Hernandez v. Cook Cty. Sheriff's Off.*, 634 F.3d 906, 914 (7th Cir. 2011) (citing *Purvis v. Oest*, 614 F.3d 713, 720 (7th Cir. 2010)). "It protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)). In determining whether Defendants are entitled to qualified immunity, the Court must ask two questions: "(1) whether the facts, taken in the light most favorable to [ ] [Mack], show that the defendant[s] violated a constitutional right; and (2) whether that constitutional right was clearly established at the time of the alleged violation." *Hernandez*, 634 F.3d at 914 (quoting *Wheeler v. Lawson*, 539 F.3d 629, 639 (7th Cir. 2008) (citations omitted)).

Defendant Love argues that "the facts alleged cannot demonstrate the Defendants were ever subjectively aware of Plaintiff's medical permits" (Doc. 105, p. 14). At the risk of being redundant, this Court disagrees, and the constitutional violations turn on the same genuine issues of material fact discussed above. Further, it is clearly established from pre-existing law that ignoring directives of medical professionals may violate an

inmate's constitutional rights. *See Zentmyer v. Kendall Cty., Ill.*, 220 F.3d 805, 812 (7th Cir. 2000) ("[i]f a defendant consciously chose to disregard a nurse or doctor's directions in the face of medical risks, then he may well have exhibited the necessary deliberate indifference"). Accordingly, Defendant Love is not entitled to qualified immunity.

## CONCLUSION

For the reasons stated above, the Defendants' Motion for Summary Judgment (Doc. 104) is **GRANTED** as to Defendant Winters. The motion is **DENIED** as to Defendant Love.

This case shall proceed to trial on the issue of Defendant Love's deliberate indifference to Plaintiff Carl Alphonso Mack. A status conference will be set by separate order to establish final pretrial conference and trial dates.

**IT IS SO ORDERED.**

DATED:  August 18, 2021

*[signature]*

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**